**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | CASE NO. 4:06CR270 |
| v. | § | |
| | § | |
| KEVIN ANDREW PACK | § | |

**MODIFIED REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE**
**JUDGE DENYING DEFENDANT'S MOTION TO SUPPRESS**

This matter having been referred by the Honorable Michael H. Schneider, the Court has

considered Defendant's Motion to Suppress (Dkt. 13). After considering the evidence presented and

the arguments of counsel, the Court finds that the motion should be DENIED.

In his motion, Defendant seeks to suppress evidence discovered pursuant to a traffic stop

conducted by the Texas State Highway Patrol on February 26, 2006. Defendant was a passenger in

a vehicle driven by Courtney Williamson which was stopped for speeding. After the car was

stopped, both Defendant and the driver were questioned by Trooper Brian Worley. After Williamson

denied consent to search her vehicle, a canine unit was requested and twenty pounds of marijuana

and a Luger 9mm semi-automatic firearm were found in the trunk of the car. Defendant now seeks

to suppress any and all physical evidence, including the marijuana and weapon, discovered during

the search as well as any statements he made during the search.

On February 27, 2008, the Court held a hearing on Defendant's motion. At that hearing, the

Government offered the testimony of Trooper Worley and introduced a videotape of the traffic stop.

The Defendant did not call any witnesses or offer any evidence.

1

## FACTUAL BACKGROUND

On February 26, 2006 Pack and his girlfriend, Courtney Williamson, were heading east on Interstate 30 when they were stopped by State Trooper, Brian Worley for speeding.  Pack was a passenger in the car.

The video of the stop shows Worley getting out of the patrol car and approaching the passenger side of the car.  Both the driver and Pack furnished their driver's licenses.  Worley testified that when he approached the car he noticed that Pack appeared extremely nervous.  His hands were shaking and Worley observed that the vein in his neck was bulging.  Worley testified that, based on his training and experience, he believed that the couple might be involved in some sort of criminal activity.   He returned to his vehicle and ran the license numbers.

Worley then asked the driver to get out and come inside the patrol car.  At that time, he asked the driver where she was coming from and she told him that she had been to Houston to visit a sick aunt.  Worley asked her several questions about the aunt as to where she lived and what her name was.  The driver stated that her name was Betty but could not offer any answer as to where she lived or the route the couple had taken to Houston.  Worley did inform the driver that she was only going to get a warning and would not be fined for speeding.

Worley then got out of the car and asked Pack where they were coming from.  Pack said they had been to San Antonio and denied going to Houston  Worley testified that, the more he questioned Pack and the driver, the more inconsistent the stories became. Worley testified that Pack's nervousness and the inconsistent stories led him to believe that the couple might have drugs.  Worley patted down Pack at least twice before having Pack join him the squad car.  Several times, Worley asked the couple whether they had drugs, "more than just useable quantities," to which both replied "no."

2

Information form the dispatcher indicated that Pack's license had been suspended, but Pack wasn't driving.  Pack's girlfriend's license was clear.  A few minutes later, Worley received a report that there were no outstanding warrants on the couple.  During this process, Worley asked the couple whether he could search the car.  According to Worley both denied permission to search the car. Worley testified that, when permission to search is denied, his usual practice is to call for the canine unit.

Accordingly, at this time, Worley called for canine assistance.  Prior to the drug dog arriving, Worley had received information from the dispatcher that the driver's license was valid and there were no outstanding warrants for either the driver or the passenger.  After a 15 minute wait or so, the drug dog arrived.  The dog hit on the trunk.  Worley opened the trunk, and inside were two black luggage bags.  Marijuana was found in both bags, and the gun was found in a bag with the name tag of Amber Pack, Pack's sister.

## ANALYSIS

The Government argues that Pack did not have standing to contest the search since he was only a passenger. Established law in the Fifth Circuit has long held that a non-owner passenger in a vehicle lacks standing to contest the *search* of the vehicle, but does not lack standing to contest the reasonableness or legality of the *stop.  See United States v. Roberson,* 6 F.3d 1088, 1091 (5th Cir. 1993), *cert. denied,* 114 S.Ct. 1322 (1994) ("Whereas the search of an automobile does not implicate a passenger's fourth amendment rights, a stop results in the seizure of the passenger and driver alike. Thus, a passenger of a stopped automobile does have standing to challenge the seizure as unconstitutional." (footnote omitted)); *U.S. v. Aguirre,* 29 F.3d 624, at *1 (5th Cir. 1994). *See also U.S. v. Harrison,* 918 F.2d 469, 472 (5th Cir. 1990); *U.S. v. Dent,* 2007 WL 4328788, at *2 (5th Cir. 2007).  Pack does not question the legality of the stop.

Pack argues that the case of *Brendlin v. California*, — U.S. —, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007), gives him standing to contest the search.  *Brendlin* holds that passengers in a motor vehicle subjected to a traffic stop are deemed seized for Fourth Amendment purposes, and, thus, are entitled to challenge the constitutionality of the stop.  *Id.* at 2406-2407.

As the Government points out, no one is challenging the constitutionality of the stop.  Ms. Williamson was clipping along at 78 m.p.h. in a 70 m.p.h. zone.  Although *Brendlin* gives Pack standing to challenge the stop, it is unclear whether *Brendlin* changes long standing Fifth Circuit precedent, or for that matter prior decisions of the Supreme Court, regarding the lack of standing to challenge the search.  *See Rakas v. Illinois*, 439 U.S. 128, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978).

This Court is bound by the precedent before it.  Any extension of the *Brendlin* doctrine to a passenger's right to challenge a search after a lawful stop is left to the Fifth Circuit or to the United States Supreme Court.

Since Pack had no standing to contest the search of the vehicle in light of the cases noted, the Court declines to answer whether a passenger can object to a search once he is detained for a period of time after inquiries have returned no evidence of outstanding warrants and the officer's only ground for calling the dog is based on conflicting stories, an appearance of nervousness, and a denial of consent to search the trunk.  The fact that the *Brendlin* rationale may very well be extended to persons similarly situated to Pack in the future still requires that this Court deny the motion for lack of standing.

Moreover, the Court finds that even if Pack were found to have standing to challenge the search under *Brendlin*, the facts in this case make it such that the motion should still be denied. Defendant has not shown that there is a factual nexus between his allegedly unlawful detention and

the challenged evidence. *See United States v. Martinez*, 2008 WL 624063, at * 3 (D. Kan. 2008) (*citing United States v. Nava-Ramirez*, 210 F.3d 1128, 1131 (10th Cir. 2000)). The reasonableness of a traffic stop is judged under the principles of *Terry v. Ohio*, 392 U.S. 1, 19-20, 88 S. Ct. 1868, 20 L. Ed.2d 889 (1968). Under *Terry*'s framework, the question during the post-stop phase of an officer's investigation becomes "whether a reasonable officer, faced with the same facts and circumstances as the detaining officer, could believe that the defendant had committed or was committing a criminal offense." *U.S. v. Powell,* 137 Fed. Appx. 701, 704 (5th Cir. 2005). In this case, Officer Worley testified Pack exhibited signs of nervousness, causing the officer to be suspicious. However, even if Defendant could show that his detention at the scene exceeded the lawful scope of the initial stop, Pack has not meet his burden of showing a factual nexus here by showing that the evidence sought to be suppressed would not have come to light otherwise. *Martinez*, 2008 WL 624063, at *7. Pack did not have a valid driver's license and therefore could not have removed the vehicle even had he been free to leave. Therefore, his allegedly illegal detention has no factual nexus to the contraband discovered in the trunk of the car. Thus, even if *Brendlin* were extended to find he had standing to challenge the stop, the motion to suppress should be DENIED.

## RECOMMENDATION

The Court recommends that the District Court **DENY** Defendant's Motion to Suppress.

Within ten (10) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(c).

5

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 10th day of April, 2008.**


_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE

6